FRANCISCO DÍAZ, Plaintiff and Appellee, v. ANTONIO EMANUELLI, Defendant, and RAMÓN CANCEL, Defendant and Appellant.

No. 8625. Argued March 18, 1943.—Decided May 5, 1943.

*Rodríguez & Parga* for appellant. *Harry B. Llenza* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

The plaintiff possessed, by virtue of a lease contract, three adjoining estates—to which we will hereafter refer as ''the estate''—that were sold by its owner and lessor, Antonio Emanuelli, to the other defendant, Ramón Cancel, during the time the contract was in force. In the amended complaint three different items of damages were claimed under three different causes of action. Under the first $650 was claimed, of that sum $545 was the estimated value of fruits pending that according to plaintiff, he could not gather as the defendant Cancel hindered him from doing so by his conduct; $25, the value of a house built on the estate by the plaintiff; and $80, the cost of certain wire fences, also built by him. Under the second cause of action he claimed $150 for damages to certain cattle that plaintiff had in the estate, and under the third cause of action, $1,000 for the suffering and mental anguish of plaintiff, caused by the loss of the

fruits and the ill-treatment to which the cattle were subjected.

The complaint was filed against Ramón Cancel as purchaser and Antonio Emanuelli as vendor of the leased estate, but Emanuelli having died, he was replaced as a party by his heirs, who failed to appear and default was accordingly entered against them.

On December 10, 1940, the lower court entered judgment dismissing the complaint as to the heirs of Antonio Emanuelli and granting it as to Ramón Cancel, ordering him to pay plaintiff the amount of $800 which the court estimated as the damages under the three causes of action, with costs. In the statement of facts and opinion, which served as a basis for the judgment, the court stated its findings thus:

"By virtue of the admissions of the defendant Mr. Cancel in his answer to the complaint and the evidence introduced at the trial, the following facts are considered as proved: That Mr. Antonio Emanuelli on September 8, 1936, leased to plaintiff, Mr. Francisco Díaz, the estates described in the complaint for a period of five years starting on the first day of October 1936, for an annual rental of $125, plaintiff having made two annual payments in advance. Said estates were sold on April 7, 1938, by Mr. Antonio Emanuelli to defendant herein, Mr. Ramón Cancel. At that time and by virtue of the lease contract, the plaintiff was in possession of the estates and had planted in them 7 acres (cuerdas) of arum (malanga), "yautía" and yam (ñame) keeping also on the estates eleven heads of cattle; that on May 10, 1938, defendant Mr. Cancel allowed plaintiff to remain on the estates until September 8 of that same year in order for him to have sufficient time to harvest everything he had planted on them; that the plaintiff and the defendant Mr. Cancel could not reach an agreement as to the estimate or value of the fruits planted in the estate or as to the improvements made in the same, for which reason, on September 23, 1938, the defendant Mr. Cancel informed the plaintiff that he needed the land where plaintiff's cattle was kept because he was going to plow said land and had decided to send said cattle to a two-acre tract of land where they were to remain until the plaintiff decided to take them away, warning him that in said tract there was no water and that he (Mr.

Díaz) should send somebody to water the cattle during the days they remained in said tract of land and warned him also (Mr. Cancel to Mr. Díaz) that said eleven head of cattle could not be kept in said tract of land for a long time without starving; that Mr. Cancel herded the cattle of the plaintiff in the two acres of land where they were kept for eleven days after which time, and with the aid of the Insular Police, he took them out of said tract of two acres and herded them to the house of the plaintiff; that said cattle, before being herded and while they were free on the estates possessed by the plaintiff lacked neither grass nor water, as a river flowed near the place where said animals grazed; and that during the time they were herded they were obliged to walk nearly four kilometers to be watered; that as a consequence of the negligent form in which said cattle had been taken care of during the days in which they were herded, they lost weight and decreased in value and a mare and a heifer died; that the plaintiff had planted in the estate in the month of September 1938, 4 acres (*cuerdas*) of arum (*malanga*) 1½ acres of "yautía" and yam (*ñame*) and ½ acre of sweet potatoes, plantations which had been destroyed by the defendant Mr. Cancel when he took possession of the estate. When Mr. Emanuelli sold to Mr. Cancel the estates leased to the plaintiff, the latter had been in possession of the same up to the time when he was dispossessed by the acts of the defendant Cancel who had no right to act in the way he had without due respect to plaintiff's rights.

"The right of the defendant Cancel to terminate the contract entered into by the plaintiff and Mr. Antonio Emanuelli is as clear as the right of the plaintiff to gather the fruits of the crop corresponding to the current agricultural year and to be indemnified by the vendor Emanuelli for the losses and damages caused to him (§1461 Civil Code) but that right gave Cancel no authority to go onto the estates and take possession of the estates and far less to take justice into his own hands by using the Police Force to take the cattle out of the estates and delivering them to the plaintiff. If such acts were allowed, our Unlawful Detainer Act, that was considered dead letter by defendant Cancel, would serve no purpose. In that case, property owners would be able to eject, with the aid of the Insular Police, the people that, with or without a right, were in possession of said estates, and destroy the whole structure of our system of government."

█ Is the plaintiff entitled to each or all of the three items of damages claimed?

The wording of the opinion of the lower court shows that the judge allowed himself to be adversely influenced against defendant by the fact that in order to take possession of the estate acquired by him he did not previously establish an action of unlawful detainer against the defendant lessee and by the additional circumstance that he used the services of an Insular Policeman to accompany his farmhands (*peones*) in herding and delivering the cattle to the plaintiff. That explains why the court in its opinion said "but that right (that of considering that the contract had expired) did not authorize Cancel to enter into the estates and take possession of the same and far less to take justice into his own hands using the Police Force to take the cattle out of the estates to deliver them to plaintiff." (Parenthesis supplied.)

It appears conclusively from the evidence that the plaintiff did not reside in the estate; that the defendant had allowed him from April 8 to September 8, 1938, to gather the fruits of his crops to leave the estate; and that in spite of that when the defendant went to take possession of the property on September 15, 1938, the plaintiff had not gathered the fruits of his crops and was not present to give him possession and had not taken the cattle out of the estate. It also appears that the defendant did not find any opposition on the part of the plaintiff or his employees. The plaintiff does not allege that he suffered any damage from the fact that the defendant took possession without obtaining his previous consent. Although Attorney Soto Rivera, counsel for plaintiff, suggested that the defendant file an action of unlawful detainer against the former, that action, as said attorney testified, was for the sole purpose of obtaining within said procedure, the crops that plaintiff had in the estate appraised. It is true that nobody should take justice into his own hands. The reason of said principle of law is to avoid the ensuing breach of the peace when using violence in the exercise of a right, but when the party against whom

it is exercised offers no resistance there is no need to apply to the courts of justice to declare the existence of a right that nobody has controverted.

It is also impertinent to the actions exercised by the plaintiff the fact that the defendant had the farmhands that herded the cattle accompanied by an Insular Policeman. There is no allegation to the effect that said Policeman performed any illegal act against any other person, limiting his actions to accompanying the farmhands of the defendant.

 The judge of the lower court calls to his aid §1461 of the Civil Code to show the right of the lessee to gather the fruits of the crops corresponding to the current agricultural year; but he does not bear in mind that said right of the lessee must be exercised in such a way that, without detriment to his right, no unnecessary damage is caused to the right of the purchaser of the realty to use and enjoy his property. The said section reads thus:

"Section 1461.—The purchaser of a leased estate has a right to terminate the lease in force at the time of making the sale, unless the contrary is stipulated, and the provisions of the Mortgage Law prevent.

"If the purchaser should make use of this right, the lessee may demand that he be permitted to gather the fruits of the crop corresponding to the current agricultural year and that he be indemnified by the vendor for the losses and damages he may have suffered."

The lease contract was not formalized by public deed, it thus being clear that it could not be recorded in the Registry of Property. For this reason the purchaser had the undisputed right, according to the provisions of said section, to terminate the lease in force at the time of the sale on April 7, 1938. He did so by verbally notifying the plaintiff when he took possession of the estate on April 8, 1938, learning from him that he (the plaintiff) was in possession by virtue of a lease contract that was not to expire until September 30, 1941. Upon finding that the plaintiff had not yet gathered the fruits of his crops, he allowed him ver-

bally, of his own initiative, to remain in the estate for that purpose, until September 8, 1938, a concession which he later affirmed by a letter dated May 10, 1938, addressed by his attorneys to the plaintiff (Exhibit No. 4 of the plaintiff).

. On September 15, 1938, when the defendant took possession of the estate the plaintiff had not yet gathered his fruits. He insisted that the defendant pay him for them an amount which the latter, who had no interest in them, considered extremely high. Notwithstanding the attitude of the plaintiff, the defendant on September 23, 1938, spontaneously allowed him an additional extension of time of 7 months from the above date to gather the fruits, extension which was stated in writing in the letter that the plaintiff introduced in evidence marked as Exhibit 6 of the plaintiff and which reads thus:

"September 23, 1938. José Soto Rivera, Esq., Loíza Street No. 17, Stop 17, Santurce, P. R. Dear Sir: I have before me the appraisal presented by Mr. Díaz of the plantings he has in my estate and in view of the exaggerated evaluation of the same I find it unworthy of consideration, as I am not interested in the least in those fruits. For said reason I have decided to inform you, so that you may let Mr. Díaz know, that I am willing to allow him to gather those fruits at the proper time so that he may obtain from them the highest profits. I am willing to allow him, for the gathering of said fruits, a term of seven months from this date, as I consider that sufficient time for those fruits to ripen. I want to warn you, however, that for me to comply with the above extension of time it is indispensable that Mr. Díaz take away the cattle he has in the estate before the first of next October. Truly yours, (Signed) Ramón Cancel Rodríguez."

According to plaintiff's own evidence, the defendant granted him, altogether, one year to gather the fruits pending when the deed of sale was closed. It does not appear from the evidence that the plaintiff, on any occasion, tried to gather them, insisting all the time that the defendant pay for them the amount at which he had appraised them. Under those circumstances, the defendant was not under any

obligation to buy the fruits. Neither was he obliged to allow the plaintiff to occupy indefinitely the estate with his plantations. The right of the latter to gather his fruits is limited, as we have already said, by the right of the defendant to the use and enjoyment of his property. If, at the expiration of said term, the share croppers had taken the fruits, fruits that, according to them and to the plaintiff, with the exception of the arum (*malanga*), had been planted on a fifty per cent basis by the share croppers, only the plaintiff is to blame as he, probably ill-advised, failed to make use of his rights; but he cannot claim the value of said fruits from the defendant who did for his benefit more than he was legally obliged to do.

■ With respect to the fence wire and the house, from the testimony of the plaintiff, it appears that he spent $80 on the fences and that he built a house which was appraised at $25 (Tr. of Ev., p. 10–11). As to the fences, the plaintiff testified that the defendant had destroyed the one he (the plaintiff) had, to build new ones. (Tr. of Ev., p. 35.) Juan Delgado, a witness for the defendant, testified that the fence that was in the estate at the time the plaintiff was in possession was made of "maya" (a variety of pineapple) and old wire (Tr. of Ev., p. 114). Another witness for the defendant, Ramón Esquilín, testified, moreover, that the defendant had to fence the estate because it had no fence. (Tr. of Ev., p. 86.) As to the house valued at $25, it appears from the evidence that the same is a grass hut built there by the man who inhabited it, a former share cropper of the plaintiff and afterwards of the defendant, named Fidel García, and who testified that not even the pieces of board that he used in the construction of the hut belonged to the plaintiff. And if we examine the opinion of the lower court, we do not find these items of damages among the facts that said court considered proved. But assuming that they had been proven, such damages would not be claimable from Ramón

Cancel, but from the previous owner, Antonio Emanuelli or his heirs. To the same effect it was said by the Supreme Court of Spain in its judgment of January 7, 1889, 65 *Jurisprudencia Civil* 43, 46:

"... and mainly because if the appellant (*recurrente*) believed he had a right to the improvements he had made when the estate belonged to another owner, he should have exercised his action against the former proprietor, who, in any case, would be the party obliged to pay for them, unless it was evident and no proof has been offered to that effect, that said obligation had been transferred to the purchaser."

In our judgment, the damages claimed under the first cause of action have not been proven. Neither do those claimed under the second cause of action exist. The plaintiff had no right to keep indefinitely his cattle in the defendant's estate. As we have already seen, §1461 of the Civil Code grants the lessee a time the law considers reasonable to gather his fruits, but it grants him no right to keep his cattle in the estate after the purchaser, in the exercise of the right granted him by said legal provision, terminates the lease contract. In the instant case the defendant granted the plaintiff the right to remain in the estate until September 8, 1938, and on that date he should have taken away the cattle. Nevertheless, it was not until November 4, 1938, as appears from the amended complaint, that the cattle were taken away by the defendant and delivered to the plaintiff. But aside from these considerations, the plaintiff did not prove that the cattle had been prejudiced. In the direct examination he testified that a mare and heifer had died. But the death of these animals, according to his own testimony, occurred one month after the cattle were in his possession, and from the cross-examination it appeared that he did not call a veterinary or any other person learned in the subject to determine what was the cause of the death of said animals, and, furthermore, he did not offer any evidence as to the value of the same.

In regard to the rest of the cattle, he limited himself to say that they had lost weight, without attempting to specify said reduction, and that he knew it by the "aspect" of the animals, but admitted that he had not weighed them, either upon leaving the estate or when he received them from the defendant. Even assuming that such evidence had been introduced, the only one responsible for the loss was the plaintiff himself, who failed to take the necessary measures to protect his property.

■ The claim for damages under the third cause of action is manifestly contrary to law. Assuming that damages could be claimed for the anguish and moral suffering caused by the loss of property subject to a monetary indemnity, we do not see how such damages could be claimed in cases where, as in the case at bar, the claim against the defendant, for material damages, is dismissed for lack of responsibility on his part. But even if it were so, the Supreme Court of Spain, interpreting §1571 of the Spanish Civil Code, identical to §1461 of our code, by Judgment of November 3, 1892 (72 *J. C.* 324) decided that the lessee can only claim, according to the last paragraph of the cited section, for damages that have been really caused to him, not being able to extend his claim to other items. And §1058 of our Civil Code provides that "no one shall be liable for events which could not be foreseen, or which having been foreseen were inevitable, with the exception of the cases expressly mentioned in the law or those in which the obligation so declares." It is difficult, if not impossible, to foresee that the plaintiff was a man of such extraordinary susceptibility that the damages he alleges the defendant caused him, produced in him such sufferings as to make him ill three months after the defendant took charge of the estate and become weak "because he could not eat due to his suffering." It seems proper to cite, as an example, the case of *González* v. *Dannermiller Coffee Co.,* 48 P.R.R. 590, where we decided, ap-

plying the principle of law established by §1058, *supra,* that in an action for breach of contract the defendant is only liable for the consequences directly originating from said breach and foreseen or that could have been foreseen by the contracting parties when the contract was entered into, and that can be derived from the lack of performance, and thus, the mental anguish and suffering are not damages that can be claimed in such an action.

We should not close this opinion without insisting in the convenience and necessity that in cases as the instant case, in which different items are claimed for damages, if the same are granted in whole or in part, by the court *a quo,* there should be specified at least in the opinion the amount granted for each item. In that way, when reviewing the case on appeal, if the judgment is to be modified due to damages having been unduly granted, this court will be in a position to know for certain the amount which the lower court granted for the item or items to which the plaintiff is entitled.

For the above-stated reasons, the judgment appealed from must be reversed and a new judgment entered, dismissing the action with costs to the plaintiff.